# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1392


**MELANIE DUCOTE LINDMEIER**

**VERSUS**

**TODD D. LINDMEIER**


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2003-5185-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Angelo Joseph Piazza III**
**Attorney at Law**
**P. O. Box 429**
**Marksville, LA 71351**
**(318) 253-6423**
**Counsel for Plaintiff Appellee:**
**Melanie Ducote Lindmeier**

**Mary Helen Johnson**
**Johnson Law Firm, LLC**
**P. O. Box 468**
**Marksville, LA 71351**
**(318) 253-0935**
**Counsel for Defendant Appellant:**
**Todd D. Lindmeier**

**PICKETT, JUDGE**.

## FACTS

Lindsay Mae Elizabeth Lindmeier was born in Lafayette, Louisiana, to a union between Melanie Ducote, a resident of Avoyelles Parish, Louisiana, and Todd Dougles Lindmeier, a citizen of Canada. On September 15, 1997, Melanie Ducote and Todd Lindmeier were married in Louisiana.

Subsequently, Mrs. Lindmeier, Mr. Lindmeier, and Lindsay Mae Elizabeth Lindmeier resided in Avoyelles Parish, Louisiana, from 1997 until February, 2002. At some point in 2001 the couple allegedly separated. All parties continued, however, to reside in Avoyelles Parish until February, 2002.

In February 2002, Mr. Lindmeier went to Canada to look for work. Mrs. Lindmeier and her two children from a previous marriage went with him. According to Mr. Lindmeier's testimony, he drove Mrs. Lindmeier back to Louisiana with the understanding she was to sell the house and then return to Canada to live with him. He took Lindsay with him back to Canada.

There is no evidence the Lindmeiers ever established a matrimonial domicile in Canada. According to Mrs. Lindmeier's testimony, all attempts on her part to return Lindsay to Louisiana were in vain. Mr. Lindmeier apparently filed a petition for divorce and custody in Canada on April 8, 2003. According to Mr. Lindmeier he retained custody by agreement of the parties, although he acknowledged he had nothing in writing. According to Mrs. Lindmeier, he retained custody not by agreement, but because he would not allow Lindsay to leave Canada and she had no recourse.

Ultimately, in late June 2003, Mrs. Lindmeier went to Canada in an attempt to bring Lindsay back to Louisiana. On June 24, 2003, she signed an Acknowledgment

1

of Receipt, acknowledging she received a copy of the divorce petition Mr. Lindmeier filed in Canada. That same day, Mrs. Lindmeier signed an affidavit wherein she stated her intention that Lindsay remain in the custody of her father and that she would be returning Lindsay to Mr. Lindmeier on July 31, 2003.

Thereafter, Mrs. Lindmeier returned to the State of Louisiana with Lindsay. On July 14, 2003, she filed a Petition For Divorce and a request for a grant of full custody of the minor child.

On July 30, 2003, a Divorce Judgment was rendered in Canada which also purports to grant custody of the minor child to Mr. Lindmeier. According to Mr. Lindmeier, there was no hearing and he was never required to go before a judge. A plain reading of the judgment supports that there was no hearing as it indicates the judgment was granted "ON READING the petition, the notice of motion for judgment, and the affidavit dated July 28, 2003 of the petition filed a support of the motion[.]" Notably, neither a copy of the mentioned motion nor a copy of the accompanying affidavit were produced at the subsequent hearing in Avoyelles Parish, Louisiana.

August 8, 2003, Mr. Lindmeier filed an Exception of Lis Pendens and Lack of Subject Matter Jurisdiction as to both the divorce and custody issues. He further alleged that Avoyelles Parish was an inconvenient forum under La.R.S. 13:1706 and requested that the court decline jurisdiction on that ground.

Following a hearing, the trial court granted Mr. Lindmeier's exception of lis pendens as to the divorce but denied the exception in all respects as to the custody issue. The trial court did not address Mr. Lindmeier's argument regarding inconvenient forum under La.R.S. 13:1706. It is from this judgment the defendant appeals.

## ASSIGNMENTS OF ERROR

The appellant sets forth three separate assignments of error:

1) The Twelfth Judicial District Court failed to properly consider the "Home State Jurisdiction" under the Uniform Child Custody Jurisdiction Act and Louisiana Revised Statute § 13:1702 (A)(1) when it did not find Canada to be the "Home State" of the minor child, Lindsay Mae Elizabeth Lindmeier

2) The Twelfth Judicial District Court erred when it found subject matter jurisdiction in the instant matter based on "Significant Connection" to Louisiana under the Uniform Child Custody Jurisdiction Act and Louisiana Revised Statute § 13:1702 (A)(2), and

3) The Twelfth Judicial District Court failed to properly exercise its discretion when it refused to consider or address Mr. Douglas Lindmeier's alternative argument of "Inconvenient Forum" under the facts and circumstances of this case and based on Louisiana Revised Statute § 13:1706(A) et seq.

## DISCUSSION

The appellant argues the trial court erred in failing to recognize Canada as the "home state" of the child. Appellant argues Canada is considered a state under the Uniform Child Custody Jurisdiction Act (UCCJA) relying on La.Civ.Code article 3516 which he argues provides that "[t]he word 'state' denotes, as may be appropriate: . . . any foreign country or territorial subdivision of a foreign country that has its own system of law." The appellant's reliance on Article 3516 is misplaced. Article 3516 is found in Book IV, Conflict of Laws. The first sentence of that article, which was deleted from the appellant's quote, sets forth as follows:

As used in this Book, the word "state" denotes, as may be appropriate. . . .

The clear wording of the statute limits it applicability to matters arising under those articles contained in the Louisiana Civil Code, Book IV. It is inapplicable to the provisions of the UCCJA.

3

The UCCJA is found at La. R.S. 13:1700, *et seq.* Louisiana Revised Statute 13:1701 sets forth the definitions applicable to the UCCJA and, in pertinent part, provides as follows:

> (5) "Home State" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
>
> . . . .
>
> (10) "State" means any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia.

Clearly, no foreign country is considered to be a "state" under the provisions of the UCCJA. As Canada is, in fact, a foreign country, it does not fall under the definition of "state" as contemplated by the act.

The provisions of the UCCJA do, however, have international application. Louisiana Revised Statute 13:1722 provides as follows:

> **International Application**
> The general policies of this Part extend to the international area. The provisions of this Part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

We must therefore, examine the evidence presented as to the Canadian proceeding and determine whether the trial court erred in failing to recognize the apparent judgment rendered in Canada on July 30, 2003, which purported to grant custody of Lindsay to Mr. Lindmeier.

A petition for divorce was filed by Mr. Lindmeier in Canada on April 8, 2003. That petition consists of a fill-in-the blank form wherein the applicable sections, as

4

they apply to the petitioner, are marked. In that petition Mr. Lindmeier seeks not only a divorce, but also full custody of the minor child, Lindsay Mae Elizabeth Lindmeier.

Upon reviewing the petition, we note some of the information supplied is incorrect based on the testimony of both parties at the hearing below. For example, the petition sets forth that Mr. Lindmeier has been a resident of Dryden, Ontario, since birth and has resided in Louisiana since 2001. According to both parties, Mr. Lindmeier was residing in Louisiana in 1997 when Lindsay was born and continued to reside in Louisiana, in Avoyelles Parish, until February 2002 when he decided to return to Canada to look for work. If both parties testified truthfully at the hearing, the statements set forth in the Canadian petition cannot be correct.

Further, the petition reflects the minor child has lived with the petitioner since birth. The testimony established the minor child lived with her mother from the time the couple separated in April 2001 until Mr. Lindmeier took her to Canada in February 2002. Although it is set forth in the petition that the child normally resides in Dryden, Ontario, there is no mention that the child is a United States resident, born in the United States and has actually resided in the United States 80% of her life.

When Mrs. Lindmeier went to Canada she signed a receipt acknowledging she had received a copy of the Canadian petition. According to her testimony, it was a receipt acknowledging she had received the papers the Canadian court had mailed to her which, according to the receipt, was the petition filed by Mr. Lindmeier. On the face of the receipt it states, among other things, "You are served by mail with the documents enclosed..." Those documents were mailed to Mrs. Lindmeier while she was residing in Louisiana. We note the cover sheet for the Petition For Divorce clearly states:

> If you are served in another province or territory of Canada or in the
> United States of America, the period for serving and filing your answer

5

is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Clearly, since Mrs. Lindmedier was served in the United States she had, under the clear wording of the notice, forty days to file an answer. Yet we note the judgment rendered which purports to grant custody to Mr. Lindmeier was issued July 30, 2003, only thirty-six days after Mrs. Lindmeier signed the Acknowledgment of Receipt.

Mrs. Lindmeier was never given notice of a hearing on the issue of custody. According to Mr. Lindmeier's testimony there was no hearing. He clearly states that he never went to court before a judge.

Mr. Lindmeier argues his wife consented to his being granted custody pursuant to the Canadian petition. This argument is based upon a sworn statement signed by Mrs. Lindmeier, at his attorney's office, wherein she stated it was her intention that Lindsay continue to reside with Mr. Lindmeier in Dryden, Ontario and her intention to return Lindsay to him on July 31, 2003. First, we note that nowhere in that document does Mrs. Lindmeier state she is relinquishing her custodial rights to Lindsay. Nor does she agree therein that he be granted full custody of Lindsay. Moreover, at the hearing Mrs. Lindmeier testified she was denied access to her daughter until she signed the sworn statement, and that she would have signed anything to gain physical custody of her daughter so that she could bring her back to the United States. Mr. Lindmeier admitted on cross-examination that had Mrs. Lindmeier not signed the documents he would not have allowed her to cross the border back into the United States with Lindsay. The trial court concluded the affidavit was signed under duress. We agree.

Considering the evidence as a whole, we do not find we are required to recognize the custody decree issued in Canada on July 30, 2003. Mrs. Lindmeier clearly was not given reasonable notice. She was not given an opportunity to be

6

heard. The information presented to the Canadian court, including that information as to the length of time the child was in Canada and in the custody of her father was, by his own testimony, incorrect. There was no court hearing in Canada whereby a determination of the best interest of the child was made. We are not even provided with a complete copy of the Canadian proceeding. We do not know what information was set forth in the affidavit upon which the custody decree was based.

In conclusion, Canada is not a "state" within the meaning of the word 'state' as it is used in the UCCJA. Further, we are not obligated to recognize the judgment of the Canadian court which purports to grant custody to Mr. Lindmeier for the reasons noted above. We find no error in the trial court's refusal to recognize Canada as the home state of the minor child.

The appellant argues the trial court erred when it found subject matter jurisdiction based on La.R.S. 13:1702(A)(2), that the child has a significant connection with this state. Louisiana Revised Statute 13:1702(A)(2) provides:

> A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> . . . .
>
> > (2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

The appellant argues that at the time the hearing below was held, Lindsay had only resided in Avoyelles Parish for approximately two weeks. The evidence does not support this argument.

7

In fact, the testimony established that Lindsay was born in Lafayette, Louisiana, at a time when her parents were residing in Iberia Parish. According to the testimony, Mrs. Lindmeier is presently residing with Lindsay in the family home in Avoyelles Parish where she and Mr. Lindmeier resided from 1997 until the time they separated in April 2001. After the separation, Lindsay continued to live in the family home until February 2002, when she was taken to Canada by her father. Lindsay lived in Louisiana, therefore, for a period of four years and nine months before living in Canada with her father. The vast majority of the time she lived in Louisiana, she resided in Avoyelles Parish. As the trial court correctly noted, Lindsay has spent 80% of her life in Louisiana. The majority of Lindsay's family live in Louisiana, including her mother, a half-brother, a half-sister, her maternal grandparents, and numerous aunts, uncles, and cousins. Lindsay lived continuously with her mother and two siblings in Louisiana for 80% of her life. All her school records and medical records, except for the sixteen-month period she was in Canada, are located in Louisiana.

This is not a situation where a child has been moved from place to place or from state to state throughout her life. Lindsay's contacts with Louisiana are not only significant, the majority of the contacts in her life have been in Louisiana, in Avoyelles Parish. The trial court found subject matter jurisdiction existed based on the significant connections with this state and that substantial evidence is available in this state concerning the child's present or future care, protection, training, and personal relationships. After reviewing the evidence, we find no error in this ruling.

In his final assignment of error, the appellant argues the trial court erred by refusing to consider or address his alternative argument of "Inconvenient Forum" based on La. R.S. 13:1706(A) *et seq*.

La. R.S. 13:1706 provides:

8

A. A court which has jurisdiction under this Part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a curator ad hoc or other representative of the child.

C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate, and

(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.

D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

E. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

F. The court may decline to exercise its jurisdiction under this Part if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.

G. If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

H. Upon dismissal or stay of proceedings under this Section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

I. Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.

Louisiana Revised Statute 13:1706(C) sets forth those things that may be considered by the court in determining whether Avoyelles Parish, Louisiana, is an inconvenient forum, among others. Although the trial court did not expressly deny the appellant's request that this be considered an inconvenient forum, it is clear from the court's statements that he did not find evidence that would support any of those circumstances listed in 13:1706(C). The trial court declined to acknowledge Canada as the child's home state, he found the child's significant contacts are in the State of Louisiana, he specifically found that evidence concerning the child's present and future care readily available in Louisiana, the parties have not agreed on another forum, and there is no evidence to support the argument that the exercise of jurisdiction by this state would contravene any of the purposes stated in La.R.S. 13:1700.

Further, we note that it is within the discretion of the court whether to find this an inconvenient forum when jurisdiction otherwise exists. The trial court declined to

find Louisiana an inconvenient forum. We find no abuse of the trial court's discretion in this determination.

## CONCLUSION

We affirm the trial court's ruling in all respects, finding no error in its determination that Louisiana has subject matter jurisdiction in this custody dispute. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against Mr. Lindmeier.